## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MAREAI SALEM AL AWBATHANI,

     Plaintiff,

                              Case No. 24-11838

v.                           HON. JONATHAN J.C. GREY

UNITED STATES DEPARTMENT
OF STATE, et al.,

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE (ECF No. 8)

## I.    INTRODUCTION

On July 17, 2024, Plaintiff Mareai Salem Al Awbathani, a Lawrence Technological University international student, filed a complaint against the U.S. Department of State and U.S. Consulate in Toronto. (ECF No. 1.) Al Awbathani alleges that defendants have unreasonably delayed the adjudication of his F-1 student visa application and interrupted his graduate studies. (*Id.*) He seeks an order compelling defendants to promptly adjudicate his application pursuant to the Administrative Procedure Act ("APA") and Mandamus Act. (*Id.*)

Defendants move to dismiss Al Awbathani's: (1) APA claim, under

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and (2) mandamus claim, under Rule 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 8.) The parties fully briefed the motion (ECF Nos. 8–10), and Al Awbathani filed a sur-reply (ECF No. 11), which the Court has also considered. After reviewing the parties' briefs, the Court finds that oral argument would not aid the Court; so, the Court decides the motion to dismiss on the record before it. *See* E.D. Mich. L.R. 7.1(f)(2).   For the following reasons, the Court **GRANTS** the motion to dismiss **WITHOUT PREJUDICE**.

## II.   BACKGROUND

The Court begins with an overview of the F-1 visa process and then turns to the factual background and procedural history of the case.

### A.   F-1 Visas

An F-1 visa is a nonimmigrant "student" visa that allows a foreign citizen to travel to the United States to study. 8 U.S.C. § 1101(a)(15)(F). To obtain an F-1 visa, an applicant must first apply to a school approved by the U.S. Department of Homeland Security's Student and Exchange Visitor Program ("SEVP-approved school"). *See* U.S. Dep't of State, *Student Visa*, https://travel.state.gov/content/travel/en/us-

visas/study/student-visa.html    [https://perma.cc/Q4D5-RWSR]    (last

visited Sept. 17, 2025). Upon acceptance to an SEVP-approved school, the

applicant may apply for an F-1 visa by completing a Form DS-160 (the

Online Nonimmigrant Visa Application), submitting biometric data, and

attending an interview with a consular officer. *Id.*; 8 U.S.C. § 1202(h).

Following these steps, the consular officer must issue or refuse the

visa. 22 C.F.R. § 41.121(a). An officer, however, can make an initial

determination and temporarily refuse to issue a visa under Section 221(g)

of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), to

allow for further administrative processing if the officer needs more

information or time to determine eligibility. *See, e.g.*, *Omar v. Blinken*,

756 F. Supp. 3d 520, 531 (S.D. Ohio 2024) (finding jurisdiction over

plaintiffs' "lawsuit to compel the consul to make a decision on their visa

applications" after a Section 221(g) denial); *Sawahreh v. U.S. Dep't of

State*, 630 F. Supp. 3d 155, 157 (D.D.C. 2022) (explaining that a consular

officer can "temporarily refuse to issue a visa" under INA § 221(g)); U.S.

Dep't    of    State,    *Administrative    Processing    Information*,

https://travel.state.gov/content/travel/en/us-visas/visa-information-

resources/administrative-processing-information.html

[https://perma.cc/GYP2-H9MR] (last visited Sept. 17, 2025).

### B.    Plaintiff's Application

Al Awbathani is a Yemeni citizen and Canadian permanent resident. (ECF No. 1, PageID.1.) In December 2022, Al Awbathani was issued an F-1 student visa to pursue a master's degree at Lawrence Technological University in Southfield, Michigan. (*Id.*) During his time there, Al Awbathani excelled in his studies and earned recognition for his academic achievements. (*Id.* at PageID.2, 12.)

In April 2024, Al Awbathani applied for a renewal of his F-1 visa, and he appeared for an interview at the U.S. Consulate in Toronto on April 10, 2024. (*Id.* at PageID.2, 13.) That same day, his visa application was refused "under section 221g of the Immigration and Nationality Act . . . for a legally mandated administrative review." (*Id.* at PageID.15.) Al Awbathani alleges that he submitted the supplemental questions requested by the U.S. Department of State (*see id.*), but his application has remained under administrative processing. (*Id.* at PageID.14; ECF No. 12, PageID.129 (the government notified the Court in August 2025 that Al Awbathani's visa application "remains refused under 8 U.S.C. § 1201(g), and additional security screening is ongoing").)

Al Awbathani planned to return to Lawrence Technological University for the semester scheduled to begin on August 21, 2024, but he has been unable to return due to the ongoing administrative processing. (ECF No. 1, PageID.2.) On July 17, 2024, just over three months after his interview and Section 221(g) denial, Al Awbathani filed this lawsuit. (*See* ECF No.1.) He raises an APA claim for unreasonable delay and seeks a writ of mandamus compelling defendants to promptly adjudicate his F-1 student visa application. (*Id.* at PageID.2.) He has now missed three semesters since he filed his complaint. Al Awbathani alleges that the "unjustified" and "unwarranted" delay has "put [his] academic progress at severe risk," "placed [his] educational goals and future career at risk," "caused significant personal and professional hardship," and caused him to experience "increased depression, anxiety, and stress." (*Id.* at PageID.1–3.) He also alleges that his "severe chronic pain and mental health issues" have worsened after he had to halt treatment at the end of 2023 "due to border issues." (*Id.* at PageID.2.)

## III.  LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion under 12(b)(1) challenges a court's subject matter

jurisdiction over the claims presented. Fed. R. Civ. P. 12(b)(1). Such a motion attacks jurisdiction either facially or factually. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack is a challenge to the sufficiency of the pleading itself," and the court "take[s] the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* A factual attack is "a challenge to the factual existence of subject matter jurisdiction" and "no presumptive truthfulness applies to the factual allegations." *Id.*

Defendants characterize their jurisdictional challenge as a factual attack. (ECF No. 8, PageID.59.) The Court disagrees. Because defendants challenge the legal sufficiency of Al Awbathani's claim and do not appear to dispute any factual allegations in the complaint or rely on any extrinsic evidence in arguing that the Court lacks jurisdiction, the motion is a facial attack on jurisdiction. *See Ritchie*, 15 F.3d at 598; *Igal v. U.S. Consulate Gen. in Johannesburg*, No. 2:23-cv-4160, 2024 WL 2882653, at *3 (S.D. Ohio June 7, 2024) (construing defendants' motion to dismiss as a facial attack where defendants rely solely on the pleadings). As such, the Court accepts the material allegations in the pleadings as true and construes them in the light most favorable to Al Awbathani. *See Ritchie*,

15 F.3d at 598. The Court also does not consider the evidence in Al Awbathani's sur-reply that was not in his pleadings.[1] *See Cartwright v. Garner*, 751 F.3d 752, 759–760 (6th Cir. 2014) (noting that a court may consider evidence outside of the pleadings in the case of a factual attack); *Igal*, 2024 WL 2882653, at **2–3 (refusing to "consider the additional evidence [p]laintiff provide[d]" that was not in her complaint where defendants brought a facial challenge).

## B.    Rule 12(b)(6)

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This presumption of

---

[1] Al Awbathani's sur-reply (ECF No. 11, PageID.115–128) does not change the Court's analysis or conclusion in this matter. The evidence consists of: (a) email exchanges, most of which seem to pertain to a prior visa refusal under Section 214(b) of the INA that is not at issue in this case; and (b) a client note from a mental health professional, which reiterates what Al Awbathani alleged in his complaint and the Court already accepted as true.

truth applicable to factual allegations "is inapplicable to legal conclusions." *Id.*

## IV.  ANALYSIS

Defendants argue for dismissal on two grounds. First, defendants maintain that the Court should dismiss the APA claim because Al Awbathani cannot establish unreasonable delay in the adjudication of his visa application. (ECF No. 8, PageID.60–68.) Second, defendants argue that the Court lacks subject matter jurisdiction over the mandamus claim. (*Id.* at PageID.68–69.) The Court agrees.

### A.    Administrative Procedure Act

#### 1.    *Applicable Law*

The APA requires each agency to "proceed to conclude a matter presented to it" within "a reasonable time," 5 U.S.C. § 555(b), and authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete*

agency action that it is *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). [2]

"A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (internal quotation marks and citations omitted). To determine whether an agency action has been unreasonably delayed, federal courts consider six factors from *Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[2] "The Court will assume without deciding" that Al Awbathani identified "a discrete, required duty" because the parties do not dispute this point, and "in any event," he has not alleged facts sufficient to state a plausible claim for unreasonable delay. *Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (assuming without deciding that plaintiff alleges the defendants are subject to a discrete, required duty because plaintiff did not suffer an unreasonable delay that warrants mandamus); *Rashidian v. Garland*, No. 1:23-1187 (ACR), 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024) (same).

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*See also Barrios Garcia*, 25 F.4th at 451–455 (applying *TRAC* factors to a motion to dismiss an unreasonable delay claim in the context of pending U-visas for qualifying crime victims). The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

While some courts have held that it is not appropriate to address the *TRAC* factors at the motion to dismiss stage because of the fact-specific nature of the inquiry, *see, e.g.*, *Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 WL 2806948, at *4 (E.D. Mich. May 31, 2024) (collecting cases), other courts, including in this district, have concluded the opposite. *Id.*; *see also Telukunta v. Mayorkas*, No. 2:21-cv-10372, 2021 WL 2434128, at **2–3 (E.D. Mich. June 15, 2021) (applying *TRAC* factors to evaluate an unreasonable delay claim in the immigration context);

10

*Stone v. Blinken*, No. 2:23-cv-12181, 2024 WL 3556183, at **4–6 (E.D.
Mich. July 26, 2024) (same). Importantly, the Sixth Circuit applied the
*TRAC* factors in evaluating a motion to dismiss in *Barrios Garcia*, an
unreasonable delay case. 25 F.4th at 451–455. This Court thus follows
the Sixth Circuit and finds it appropriate to apply the *TRAC* factors at
the motion to dismiss stage of this litigation.

> 2. *Application of the TRAC Factors*

### a. Factors One and Two

The first two *TRAC* factors, assessing whether the time agencies
take to make decisions is governed by a rule of reason and whether a
statutory scheme supplies content for this rule of reason, are generally
considered together. *Stone*, 2024 WL 3556183, at *4. The first *TRAC*
factor is the "most important." *Id.* (quoting *Telukunta*, 2021 WL 2434128,
at *2); *In re Core Commc'ns, Inc.*, 531 F.3d at 855. "Together, these two
factors 'get at whether the agency's response time complies with an
existing specified schedule and whether it is governed by an identifiable
rationale.'" *Stone*, 2024 WL 3556183, at *4 (quoting *Ctr. for Sci. in the
Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C.
2014)).

The first *TRAC* factor favors defendants. Both parties agree that there is no statutory or regulatory timeline within which the State Department must adjudicate, or re-adjudicate, visa applications. (ECF No. 8, PageID.62; ECF No. 9, PageID.76.) "[A]bsent another applicable rule of reason," as is the case here, "courts 'typically turn to case law as a guide'" to evaluate the first two factors. *Yafai*, 2024 WL 2806948, at *5 (quoting *Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)). The Sixth Circuit, however, has noted that "when no statute sets a deadline for an agency action, the second *TRAC* factor is not relevant to an 'unreasonably delayed' analysis." *Barrios Garcia*, 25 F.4th at 453 (quoting *TRAC*, 750 F.2d at 80). The Court therefore will only turn to case law to guide its evaluation of the first *TRAC* factor and will consider the second factor neutral.

As an initial matter, the parties disagree about the proper method for calculating delay—defendants posit that it is the length of time between the last agency action and the filing of the complaint (ECF No. 10, PageID.97–98), and Al Awbathani believes it is the time between the last agency action and present day. (*See* ECF No. 9, PageID.76, 78.) The Court agrees with Al Awbathani and calculates the delay from the date

of last agency action to the time of the Court's ruling. *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 31 n.10 (D.D.C. 2024) (collecting cases).

Defendants cite *Isse v. Whitman*, No. 22-3114 (BAH), 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023), to support their position, but despite the quoted language there, the cases cited in the relevant footnote in *Isse* appear to calculate the delay as the time between the last agency action and the court's ruling. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022) (recognizing a 30-month delay, which is accounted for by the length of time between the last government action in October 2019 and the court's ruling issued in April 2022); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *6 n.6 (D.D.C. Jan. 10, 2023) (recognizing a 41-month delay, which is accounted for by the length of time between the last government action in July 2019 and the court's ruling issued in January 2023). Since the last government action on Al Awbathani's application occurred in April 2024, the delay here is 17 months.

Al Awbathani argues that the 17-month delay in the adjudication of his visa application is unreasonable given the length of time that has passed. The case law, however, favors defendants. While "[n]o bright

13

lines have been drawn in this context," "courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (internal quotation marks and citations omitted) (collecting cases); *see also Ahmed v. Blinken*, No. 23-11860, 2024 WL 4172525, at *5 (E.D. Mich. Sept. 12, 2024) (collecting cases); (ECF No. 8, PageID.63–64 (collecting cases).)

Still, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *see also Barrios Garcia*, 25 F.4th at 451 ("A claim of unreasonable delay is necessarily fact dependent[.]"). And as Al Awbathani points out (*see* ECF No. 9, PageID.79), the cases cited by defendants (*see* ECF No. 8, PageID.63–64) were concerned with immigrant visa processing, which involve different government agencies and perhaps different guidelines.

Al Awbathani stresses that F-1 visa cases are uniquely time-sensitive because they are tied to a program's start date and should thus be subject to "expedited adjudication." (ECF No. 9, PageID.79–81, 83–

14

86.) If as Al Awbathani would like the Court to find that F-1 visas should be processed on an expedited timeline compared to other visa types, that is not a matter for this Court to decide. *See, e.g.*, *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–154 (D.D.C. 2017) ("Congress has given the agencies wide discretion in the area of immigration processing."). The Court can, however, look to case law in the F-1 visa context as a guide, and it does so here. *See Yafai*, 2024 WL 2806948, at *5.

While the Court sympathizes with Al Awbathani's situation, many federal courts have not found comparable delays in the adjudication of nonimmigrant F-1 or J-1[3] visas in similar cases to be unreasonable. *See, e.g.*, *Babaei*, 725 F. Supp. 3d at 31 (Year-and-a-half delay in the adjudication of J-1 or F-1 visa was not unreasonable); *Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (21-month delay in the adjudication of J-1 visa was not unreasonable); *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (21-month delay in the adjudication of F-1 visa was not

---

[3] In this analysis, "there is no relevant difference between" the F-1 student visa Al Awbathani seeks, and the J-1 visa plaintiffs sought in other cases. *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). The J-1 visa is for funded educational-exchange programs and "both require the same consular-interview process." *Id.*

15

unreasonable); *Sawahreh*, 630 F. Supp. 3d at 162 (15-month delay in adjudication of J-1 visa was not unreasonable). The 17-month delay here falls under the median 19.5-month delay of cases the Court reviews. *See id.*

Further, "the Supreme Court has cautioned that the passage of time alone cannot establish unreasonable delay under the APA." *Ahmed*, 2024 WL 4172525, at *4 (citing *INS v. Miranda*, 459 U.S. 14, 18 (1982); *Muminov v. Sessions*, No. 1:18-cv-1034, 2018 WL 5298386, at *4 (N.D. Ohio Oct. 25, 2018)). As such, the 17-month delay in this case cannot in itself establish unreasonable delay under the APA. *See id.*

Al Awbathani distinguishes his case from the single F-1 visa case cited by defendants, *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at **3–4 (D.D.C. Jan. 17, 2023), where the court found an 11-month delay not to be unreasonable. (ECF No. 10, PageID.98; ECF No. 11, PageID.108.) In *Rahman*, the plaintiff sought an F-1 visa to enroll in a degree program, 2023 WL 196428, at *1, whereas here, Al Awbathani seeks to renew his F-1 visa to continue a degree program he has already begun. While the Court appreciates this factual difference, the plaintiff in *Shen v. Pompeo* also sought an F-1 visa renewal to continue his studies

in a graduate program he had already begun. 2021 WL 1246025, at *1. Yet, the court in *Shen* did not find the 21-month delay unreasonable. *Id.* at *8. Moreover, Al Awbathani does not offer, and the Court is not aware of, any authority to support his position that an F-1 visa renewal where a plaintiff's academic pursuits have been disrupted in the middle of a degree program should be treated differently for purposes of the first two *TRAC* factors. Nor does Al Awbathani allege changed circumstances during the disrupted degree program which could warrant different analysis than the initiation of a degree program.

Al Awbathani makes no factual allegations that no rule of reason exists or that defendants have not applied a rule of reason that should have been applied, which would impact the Court's analysis.[4] *See Hussein v. Beecroft*, 782 F. App'x 437, 443–444 (6th Cir. 2019) (holding that plaintiff's amended complaint alleges no plausible facts that the government unreasonably delayed the adjudication of his visa where only "broad assertions" of unreasonable delay and other "bare allegations that the defendants violated the law" "pepper" the complaint); *see also Ahmed*,

---

[4] In his sur-reply, Al Awbathani argues that his delay appears to result from oversight or inefficiency, but there are no related factual allegations in his complaint. (ECF No. 11, PageID.110.)

2024 WL 4172525, at **4–5 (finding the first two factors weigh in plaintiffs' favor and distinguishing *Barrios Garcia*, where plaintiffs make no allegations in their complaint that the rule of reason is not being applied to the adjudication of their application).

In *Barrios Garcia*, the Sixth Circuit found that the plaintiffs adequately alleged no rule of reason governs the U-visa adjudication process where the complaint alleged that many U-visa applications submitted after plaintiffs' applications were decided before theirs and included other allegations that "reflect a breakdown of any rule of reason that USCIS purports to follow." 25 F.4th at 453.

This case is distinguishable. Al Awbathani makes no factual allegations that the delay was unique to his case, there is no rule of reason, or there was a rule of reason that defendants failed to follow. *See Ahmed*, 2024 WL 4172525, at *4. Indeed, he only alleges that his visa application "remains pending, with no updates." (ECF No. 1, PageID.2.) For the reasons discussed above, and based on the facts alleged, the 17-month delay alone is not sufficient to establish unreasonable delay.[5]

---

[5] The Court declines to adopt a rigid rule of a numerical cutoff for unreasonable delay. Depending on the circumstances, a continued extended delay here ultimately might amount to unreasonable delay.

The Court thus concludes that the first and most important *TRAC* factor weighs in favor of defendants, and the second factor is neutral.

### b. Factors Three and Five

The third and fifth TRAC factors—concerning whether human health and welfare are at stake and the nature and extent of interests prejudiced by delay—slightly favor Al Awbathani.

Several courts have found that the third and fifth *TRAC* factors weigh in favor of plaintiffs when delays in visa processing have impacted their educational, financial, and professional interests and/or caused them to defer their academic and career plans. *See, e.g.*, *Rashidian v. Garland*, No. 1:23-1187 (ACR), 2024 WL 1076810, at *9 (D.D.C. Mar. 8, 2024) (finding that third and fifth factors "at least arguably tilt in [the] [p]laintiffs' favor" where they "alleged concrete injuries to their educational, familial, financial, and professional interests caused by [the] [d]efendants' delay."); *Babaei*, 725 F. Supp. 3d at 32 (finding that third and fifth factors "slightly favor [p]laintiffs, given their allegations that they have had to defer their academic and career plans, and medical research they plan to pursue"); *Sawahreh*, 630 F. Supp. 3d at 163 (same). The Court reaches the same conclusion here.

19

Like the plaintiffs in *Rashidian*, *Babaei*, and *Sawahreh*, Al Awbathani alleges that the delay in adjudication of his visa application has stalled his academic progress and jeopardized his career aspirations. (ECF No. 1, PageID.1, 3.) He was scheduled to begin his new semester in August 2024, and he has since been unable to re-enroll at Lawrence Technological University to complete his master's degree. (*Id.* at PageID.1–2.) The resulting harm to Al Awbathani's mental health and emotional well-being further tilt the third and fifth *TRAC* factors in his favor. (*Id.* at PageID.2 (describing increased depression, anxiety, and stress)); *see Ahmadi*, 2024 WL 551542, at *6 (finding that third and fifth factors "slightly favor" plaintiff where he described health-care-related expenses and significant anxiety caused by defendants' delay).

Still, although Al Awbathani has "'an interest in prompt adjudication, so too do many others facing similar circumstances.'" *Stone*, 2024 WL 3556183, at *5 (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)); *see Telukunta*, 2021 WL 2434128, at *3 (finding the third and fifth factors slightly favor plaintiff where "the prejudice against [p]laintiff is not unexpected or unusual"); *see also Rashidian*, 2024 WL 1076810, at *9 (concluding that factors three and five do not "plausibly

outweigh the other factors favoring [d]efendants" where the plaintiffs' injuries are likely shared by many others in similar circumstances and are "not so extreme or unusual"). As such, the third and fifth factors tilt in Al Awbathani's favor but "do not carry the day." *Yafai*, 2024 WL 2806948, at *5 (internal quotation marks and citation omitted).

### c. Factor Four

"Courts typically afford great weight to the fourth factor," which considers the effect of expediting delayed action on agency activities of a higher or competing priority. *Stone*, 2024 WL 3556183, at *6 (internal quotation marks and citations omitted). The fourth factor favors the government because, as other courts in this district have found, "'a judicial order putting' a plaintiff's application 'at the head of the queue' would 'move[] all others back one space and produce[] no net gain.'" *Yafai*, 2024 WL 2806948, at *5 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Telukunta*, 2021 WL 2434128, at *3.

As the government argues, granting Al Awbathani relief "necessarily mean[s] additional delays for other applicants," including similarly situated F-1 visa applicants. *Ahmadi*, 2024 WL 551542, at *6 (internal quotation marks and citation omitted). Other courts have found

that the fourth factor favors defendants in similar cases in the F-1 and J-1 visa context as well. *See, e.g.*, *Babaei*, 725 F. Supp. 3d at 31–32; *Ahmadi*, 2024 WL 551542, at *6; *Shen*, 2021 WL 1246025, at *9; *Sawahreh*, 630 F. Supp. 3d at 163–164.

Al Awbathani argues that he "does not seek to bypass any established queue arbitrarily but to remedy what appears to be an exceptional delay." (ECF No. 11, PageID.111.) But Al Awbathani does not allege that defendants have treated his student visa application differently than other student visa applicants facing similar circumstances, *see Ahmed*, 2024 WL 4172525, at *6, nor has he alleged any basis to believe he was "singled out for slower adjudication." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 343 (D.C. Cir. 2023). Without such allegations to "alleviate[] the line-jumping concern," *id.*, the fourth *TRAC* factor favors the government.

### d. Factor Six

Finally, just as other courts in this district have found, the sixth *TRAC* factor—that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," 750 F.2d at 80—is neutral here where Al

Awbathani does not allege impropriety or bad faith on the part of defendants. *See, e.g.*, *Ahmed*, 2024 WL 4172525, at *7; *Telukunta*, 2021 WL 2434128, at *3. Al Awbathani himself concedes that he has not alleged impropriety. (ECF No. 11, PageID.111; ECF No. 9, PageID.87.)

While other courts in this district have found that the sixth factor favors the government when there is no allegation of impropriety or bad faith, *see Stone*, 2024 WL 3556183, at *6; *Yafai*, 2024 WL 2806948, at *5, this Court follows the decisions in *Ahmed*, *Telukunta*, and decisions from other districts that have found this factor to be neutral in similar cases. *See Rashidian*, 2024 WL 1076810, at *9 (finding the sixth factor favors neither side where plaintiffs have not alleged impropriety); *Ahmadi*, 2024 WL 551542, at *6 (same); *Babaei*, 725 F. Supp. 3d at 32 (same). The text of the sixth factor makes clear that a finding of impropriety is not necessary to hold an agency's action is unreasonably delayed—in other words, where there is no "impropriety lurking behind agency lassitude," *TRAC*, 750 F.2d at 80, the sixth factor does not lean one way or the other.

### e. Conclusion

Two of the *TRAC* factors slightly favor Al Awbathani while two factors that carry greater weight, one of which is most important, more

strongly favor defendants. The Court therefore **GRANTS** defendants'
motion to dismiss Al Awbathani's APA claim alleging unreasonable
delay. The Court nonetheless recognizes that the delay "imposes
hardship on Plaintiff[], and it encourages the Government to act on the
application as soon as possible." *Rahman*, 2023 WL 196428, at *4
(internal quotation marks and citation omitted).

### B.   Mandamus

Defendants argue that the Court should dismiss Al Awbathani's
mandamus claim because the Court lacks subject matter jurisdiction over
it. The Court agrees.

The Mandamus Act confers jurisdiction over "any action in the
nature of mandamus to compel an officer or employee of the United
States or any agency thereof to perform a duty owed to the plaintiff." 28
U.S.C. § 1361. Mandamus is a "drastic" remedy "to be invoked only in
extraordinary situations." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d
487, 491 (6th Cir. 2011) (internal quotation marks and citation omitted).
This drastic remedy is available only if: "(1) the plaintiff has a clear right
to relief; (2) the defendant has a clear duty to act; and (3) there is no other
adequate remedy available to plaintiff." *Id.* (internal quotation marks

24

and citation omitted). "When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004); *see also Yafai*, 2024 WL 2806948, at *2 (collecting cases where courts elect to analyze a plaintiff's APA claim only where the plaintiff seeks identical relief under the APA and the Mandamus Act).

The Court applied the *TRAC* factors above and found that Al Awbathani, based on the facts alleged, could not establish unreasonable delay under the APA. Because the Court would apply the same principles and standards to determine jurisdiction for Al Awbathani's mandamus claim, *see Nelson*, 107 F. App'x at 471, the Court necessarily finds that it lacks subject matter jurisdiction over his mandamus claim. *See Telukunta*, 2021 WL 2434128, at *4 ("Put simply, Plaintiff has an adequate remedy under the APA if she could establish an unreasonable delay, but she cannot. As a result, the Court lacks subject-matter jurisdiction over her claim."); *Stone*, 2024 WL 3556183, at *7 (same). The Court therefore **GRANTS** the motion to dismiss Al Awbathani's petition for a writ of mandamus.

## V.   CONCLUSION

Accordingly, **IT IS ORDERED** that defendants' motion to dismiss the complaint (ECF No. 8) is **GRANTED WITHOUT PREJUDICE**.

**SO ORDERED**.

Date: September 18, 2025

**s/Jonathan J.C. Grey**
JONATHAN J.C. GREY
UNITED STATES DISTRICT JUDGE

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 18, 2025.

**<u>s/ S. Osorio</u>**
Sandra Osorio
Case Manager